**Marie AKEE, Plaintiff,**

v.

**OFFICE OF NAVAJO AND HOPI INDIAN RELOCATION, an Administrative agency of the United States, Defendant.**

**No. CIV 94–1023.**

United States District Court,
D. Arizona.

Nov. 4, 1995.

Glen Morel Renner, Navajo–Hopi Legal Services Program, Tuba City, AZ, for plaintiff.

Michael A. Johns, U.S. Attorney's Office, Phoenix, AZ, for defendant.

### MEMORANDUM OPINION AND ORDER

ROSENBLATT, District Judge.

Plaintiff Marie Akee, an enrolled member of the Navajo Nation, brought this action for the purpose of obtaining judicial review of the administrative decision of the defendant Office of Navajo and Hopi Indian Relocation (ONHIR) that she is not entitled to relocation assistance benefits pursuant to the Navajo–Hopi Land Settlement Act, 25 U.S.C. § 640d, *et seq.* Ms. Akee contends that she is entitled to benefits because she was a legal resident of the Tolani Lake area, an area partitioned to the Hopi Tribe, on December 22, 1974, and that the ONHIR Hearing Officer's contrary decision, which was adopted by the ONHIR as its final agency action, is arbitrary, capricious, not based upon substantial evidence, and contrary to law. Having considered the parties' cross-motions for summary judgment in light of the entire administrative record, the court finds that ONHIR is entitled to entry of judgment in its favor as a matter of law pursuant to Fed.R.Civ.P. 56 because its denial of benefits is supported by substantial evidence and is not arbitrary, capricious, or contrary to law.

◼ Under the Administrative Procedure Act, this court may set aside an administrative agency's decision if that decision was arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A) & (E); *Bedoni v. Navajo–Hopi Relocation Commission,* 878 F.2d 1119, 1122 (9th Cir. 1989). *See also Walker v. NHIRC,* 728 F.2d 1276, 1278 (9th Cir.1984). While the court's review under this standard must be "searching and careful," it remains "narrow," and the court may not substitute its judgment for that of the agency, *Mt. Graham Red Squirrel v. Espy,* 986 F.2d 1568, 1571 (9th Cir.1993), and must uphold the agency's decision if that decision reflects reasoned decisionmaking based on evidence in the record viewed as a whole.

◼ In order to be entitled to receive relocation benefits under the Navajo–Hopi Settlement Act, Ms. Akee must meet three requirements. First, she must show that, on December 22, 1974, she was a legal resident of an area partitioned by the Settlement Act to the Tribe of which she is not a member. 25 C.F.R. § 700.147(a) (1986). She can prove her legal residency on the Hopi Partitioned Land (HPL) by proving a physical presence on the HPL in the form of substantial, recurring contacts and manifestations of her intent to maintain the HPL as her residence as of December 22, 1974. 49 Fed.Reg. 22277 (May 29, 1994); ONHIR *Plan Update* of 1990, at 7 (defining residency as "legal residency, where a person might be temporarily away, but maintained substantial, recurring contact with an identifiable homesite.") Second, she must not be a member of the Tribe which received the partitioned land. 25 C.F.R. § 700.147(a). Third, she must have been a

head of a household and/or immediate family at the time when she moved from the partitioned land. *Id.* It is undisputed that Ms. Akee meets the second and third requirements. The parties' dispute is whether the Hearing Officer properly determined that Ms. Akee failed to meet the first requirement.

■ Ms. Akee argues that the Hearing Officer's finding that she was not a legal resident of the HPL on December 22, 1974 is not supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Information Providers' Coalition for Defense of the First Amendment v. FCC,* 928 F.2d 866, 870 (9th Cir.1991) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 201, 59 S.Ct. 206, 210, 83 L.Ed. 126 (1938). "This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). In this case, the Hearing Officer's determination that Ms. Akee was not a legal resident on partitioned land on December 22, 1974 was based primarily on her own testimony as well as the testimony of her husband and grandmother. (Decision at 4, Admin.Rec. 46).

■ Ms. Akee testified that she lived with her grandmother in the Tolani Lake Chapter of the Navajo Nation from the date of her birth until the age of five when she went to boarding school. (Tr. at 3–4, Admin.Rec. 44). She further testified that while at boarding school she visited her grandmother during holidays and school breaks, *id.,* that when she got out of high school she had some livestock at her grandmother's house (Tr. at 6, Admin.Rec. 44), that she married in 1969 and moved away from Tolani Lake to Tuba City, Arizona for a year and a half where she stayed with her husband's parents (Tr. at 5–7, Admin.Rec. 44), that from approximately 1971 to 1973 she lived in Roswell, New Mexico while she and her husband attended Bureau of Indian Affairs training programs,

(Tr. at 6–7, Admin.Rec. 44), that she and her family lived with her grandmother in Tolani Lake for approximately six months after returning from Roswell, after which she and her family moved to Tuba City where they stayed with her husband's parents while her husband worked in Page, Arizona and later at Black Mesa. (Tr. at 7, 10, Admin.Rec. 44). She also testified that while in Tuba City, she visited her grandmother at Tolani Lake every weekend (Tr. at 8, Admin.Rec. 44), and that when she visited her grandmother, she would help with the livestock and household chores, and give her grandmother money to help her out (Tr. at 13, Admin.Rec. 44), that she always voted in Tolani Lake (Tr. at 8–9, Admin.Rec. 44), and that her children attended school in Tolani Lake when they lived there after returning from Roswell and then in Tuba City when they lived there. (Tr. 13–14, Admin.Rec. 44). In addition, Ms. Akee testified that while she lived in Tuba City she no longer had any livestock or any possessions at her grandmother's house in Tolani Lake. (Tr. at 8, Admin.Rec. 44). The Hearing Officer concluded that this testimony suggested that Ms. Akee's primary residence and legal residence at the pertinent time was Tuba City and not Tolani Lake. (Decision at 4, Admin.Rec. 46).

Ms. Akee asserts that the Hearing Officer's decision is unsupported by substantial evidence because the Hearing Officer ignored evidence as to the frequency of her visits to Tolani Lake. Ms. Akee argues that her contacts with Tolani Lake, being nearly every weekend, occurred on a regular basis, not on an occasional basis. In addition, she points out that she and her husband lived at Tolani Lake for six months when they returned from their training program in Roswell, and again for a period of several years subsequent to 1974 after her husband started silversmithing full-time. Finally, she argues that when in Tolani Lake she participated in activities Navajos typically engage in while at home such as household chores, voting, tending to livestock, contributing financially to the household, and enrolling the children into preschool in Tolani Lake. Further, Ms. Akee asserts that the fact that she was able to be in Tolani Lake only on the weekends

while her husband was working in Page or Black Mesa is not a factor in determining legal residency. She claims the Hearing Officer's comparison of the time spent in Tuba City with the time spent in Tolani Lake is improper because it fails to recognize that the only reason she would have been in Tuba City during the week is because of her husband's employment which is an indication of her "temporarily away" status. Ms. Akee states that "temporarily away" status is a recognition of the fact that an individual may leave the partitioned area temporarily to seek job, or other opportunities, yet still maintain strong ties to their homes and community. *See Plan Update* at 7.

However, the court concludes that the Hearing Officer did consider the relevant factors before deciding that Ms. Akee was not a legal resident of Tolani Lake on December 22, 1974 and that there is a rational connection between the Hearing Officer's findings and his decision which is supported by substantial evidence.[1] Although the record shows that Ms. Akee visited her grandmother often and helped with chores and provided other support, it also shows that between the time she married and the end of 1974 she and her family were absent from Tolani Lake for a very substantial amount of time without her having any personal belongings at her grandmother's house or any livestock there. The Hearing Officer could reasonably conclude from the evidence that Ms. Akee did not qualify for the "temporarily away" status and that her trips to Tolani Lake prior to December 22, 1974 were "for visitation purposes and were not for the purpose of maintaining a legal residence there." (Decision at 3, Admin.Rec. 46).

■ Ms. Akee also argues that the ONHIR decision is arbitrary and capricious because the Hearing Officer failed to follow ONHIR's standards set in its precedents. Ms. Akee asserts that the ONHIR determination that she was ineligible for relocation benefits is inconsistent with previous ONHIR determinations that periodic contact with and continued use of the homesite on the HPL is sufficient to maintain legal residence on the HPL. Ms. Akee's contention is that her contacts with the HPL were at least as substantial as those of many applicants who have been certified as eligible for relocation benefits.

■ Generally, administrative agencies must apply the "same basic standard of conduct to all parties before them". *Teamsters Local Union 769 v. NLRB*, 532 F.2d 1385, 1392 (D.C.Cir.1976). *See also McHenry v. Bond*, 668 F.2d 1185, 1192 (11th Cir.1982). If an agency's decision is inconsistent with other findings, the decision may be considered arbitrary if the agency fails to explain the discrepancy. *See Teamsters Local Union v. NLRB*, 532 F.2d at 1392.

Ms. Akee cites in support of her position the ONHIR decisions in (1) *Joanne V. Goldtooth*, wherein the ONHIR reversed the hearing officer's denial of benefits to a claimant who returned to Tolani Lake on weekends while temporarily living with her brother in Tuba City while her husband was in military service, (2) *Peggy Bex Bolszio*, wherein the claimant was found to be a legal resident of the HPL despite the fact that she owned her own house in Phoenix since the mid–1960s, and (3) *Dale Dixon*, wherein the ONHIR reversed the hearing officer's denial of benefits to the claimant, Ms. Akee's brother, who was living and working at the relevant time in Winslow, Arizona.

The court concludes that the cases cited by Ms. Akee do not assist in the resolution of this case, and do not make the ONHIR's decision arbitrary and capricious, because they are either distinguishable or have not been shown to be apposite to this case. As a result, there is no reason why ONHIR should explain why it denied relocation assistance benefits to Ms. Akee while granting such benefits to others. In *Joanne V. Goldtooth*, the claimant was initially denied relocation benefits, but the reasons why she was ultimately certified are not contained in the reversal letter. In *Peggy Bex Bolszio*, the claimant had substantial recurring contacts

---

1. For this reason the Court rejects Ms. Akee's related argument that the Hearing Officer's conclusion regarding her legal residency is contrary to the equivalent concept of domicile under federal common law.

with her traditional home in Jeddito because she changed her residency back to Jeddito, her young children permanently resided at her mother's home there, and she used her mother's address. Ms. Akee has not provided evidence of such substantial contact. In *Dale Dixon,* the ONHIR's reasons for deciding to certify him are not contained in the determination letter.

Ms. Akee further argues the Hearing Officer's conclusion that she was not a legal resident of the HPL at the relevant time is contrary to the federal trust relationship. The federal government has a trust relationship with Native Americans, *Seminole Nation v. United States,* 316 U.S. 286, 296, 62 S.Ct. 1049, 1054, 86 L.Ed. 1480 (1942), such that the government and its agencies must act in good faith and with fairness toward Native Americans, *United States v. Payne,* 264 U.S. 446, 448, 44 S.Ct. 352, 352, 68 L.Ed. 782 (1924), and ambiguities in federal law must be construed in favor of Native American rights. *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 143–44, 100 S.Ct. 2578, 2583–84, 65 L.Ed.2d 665 (1980).

The court concludes that the ONHIR's decision in this case does not violate the federal government's trust obligation to Native Americans because the decision was made in good faith, it was based on substantial evidence, and it was neither arbitrary nor patently inconsistent with other ONHIR decisions. Although Ms. Akee argues that the Hearing Officer ignored testimony that supported her eligibility for benefits and failed to resolve doubts in her favor, she has not established that any relevant testimony was ignored, nor has she established the existence of any "doubts" that were legally required to be resolved in her favor.

In summary, the court finds that Ms. Akee has failed to establish that the ONHIR's decision denying her relocation assistance benefits is arbitrary, capricious, not based on substantial evidence, or contrary to law. First, the ONHIR decision was based on substantial evidence as is evident from the fact that Ms. Akee's own testimony supports the Hearing Officer's findings. Second, the ONHIR decision was not inconsistent with its decisions to grant such benefits to Gold-

tooth, Bolszio and Dixon, because those cases are distinguishable; thus, ONHIR was not acting arbitrarily and capriciously by not explaining why it ruled differently in each case. Third, the ONHIR decision has not been shown to be contrary to the federal government's trust obligation to Native Americans.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. # 12) is denied.

IT IS FURTHER ORDERED that Defendant's Cross–Motion for Summary Judgment (Doc. # 15) is granted and the Clerk of the Court is directed to enter judgment accordingly.